**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates, California State Bar No. 167688
hbates@cbplaw.com
David Slade (to apply *pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

(Additional Counsel on Signature Page)

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANDLER McFALL and KAILEY McDONALD, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>PERRIGO COMPANY, and WALMART INC.,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>1. Violations of California's False Advertising Laws, <u>Cal. Bus. & Prof. Code</u> §§ 17500, *et seq.*<br><br>2. Violations of California Consumers Legal Remedies Act, <u>Cal. Civ. Code</u> §§ 1750, *et seq.*<br><br>3. Violations of California's Unfair Competition Laws, 'Unfair' and 'Fraudulent' Prongs; <u>Cal. Bus. & Prof. Code</u> §§ 17200, *et seq.*<br><br>4. Violations of California's Unfair Competition Laws, 'Unlawful' Prong; <u>Cal. Bus. & Prof. Code</u> §§ 17200, *et seq.* |

Plaintiffs Chandler McFall and Kailey McDonald ("Plaintiffs"), by their undersigned counsel, on behalf of themselves and all persons similarly situated who purchased Equate Infant's Pain & Fever Acetaminophen, bring this Class Action Complaint against Defendants Walmart Inc. ("Walmart"), and Perrigo Company ("Perrigo") (collectively, "Defendants"). Plaintiffs allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1.     Walmart is an American multinational retail corporation that operates a chain of hypermarkets with over 4,700 retail locations throughout the United States, more than 300 of which are in California.

2.     Walmart's private label brands provide a huge source of revenue for the retailer. Since at least 2018, the focus on its private label offerings has "play[ed] a really important part" in the company's business model, per Walmart's Chief Financial Officer, Brett Biggs. A 2018 report found that 84% of Walmart's customers purchase its private brand products. Seventy percent of consumers say they purchase private label products in order to save money. As a whole, Walmart's private label products are generally more profitable for Walmart than the name-brand products it sells.

3.     Walmart sells consumable pharmacy and health and beauty items through one of its strongest private label brands, Equate. Included in the Equate brand portfolio are its over-the-counter pain reliever and fever reducers, including Equate Infant's Pain & Fever Acetaminophen ("Infants' Product" or the "Product"). Walmart positions its private label product as a "national brand equivalent," selling it alongside brand-name acetaminophen products, such as Infants' Tylenol.

4.     Upon information and belief, Defendant Perrigo manufactures and labels all Equate brand acetaminophen suspension liquids for distribution in Walmart retail stores, including Infants' Product.

CLASS ACTION COMPLAINT

5.      Giving a child too much acetaminophen can be dangerous and even fatal, a problem that terrifies parents and caregivers and causes them to be extra careful when buying medicine for their young children and babies. The FDA warns parents and caregivers to "[b]e very careful when you're giving your infant acetaminophen." Defendants' packaging for their Infants' Product exploits parents' and caregivers' fear of giving their children an improper (and possibly fatal) dosage or formulation. Defendants do this by designing its packaging to mislead a parent into thinking that the Infants' Product is specially-formulated, or otherwise possesses some unique medicinal quality, to make it specifically appropriate for infants as opposed to older children. The front of a box of the Infants' Product contains representations (the product name and photo of a parent holding up a small child), which are likely to deceive consumers into believing that the Infants' Product is specially formulated for infants or otherwise unique for infants.

6.      In reality, the medicine contained in a bottle of Infants' Product contains the same active ingredient and formulation (*i.e.* 160 mg per 5 mL of acetaminophen) that is contained in a bottle of Defendants' Children's Pain & Fever Acetaminophen Oral Suspension ("Children's Product"). Thus, there is no difference in the medicine sold in the Infants' Product and the Children's Product. But Defendants do not disclose this important information anywhere on the Infants' Product packaging (though the front of the box *does* explicitly compare the Product to name-brand Infants' Tylenol). Accordingly, representing to consumers that the Infants' Products are somehow different or specially formulated so that they—and they alone—should be used in caring for infants is materially deceptive to reasonable consumers. This omission causes consumers economic damage because Walmart charges substantially more money for its Infants' Product—as much as twice as much per ounce—than for its Children's Product. Yet there is no reason for this dramatic price increase, as both medicines are identical.

## JURISDICTION AND VENUE

7.    Plaintiffs and all members of the proposed Class are or were citizens of the State of California during all times relevant herein.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and conduct giving rise to the violations of law occurred in this District. This includes the transaction at issue—Plaintiffs' purchase of the Product.

9.    Defendants are publicly-traded corporations authorized to do business in the State of California, and, at all relevant times hereto, were engaged in the manufacturing, labeling, packaging marketing and sale of the Product in the State of California.

10.    This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that there is minimal diversity and the aggregate amount in controversy exceeds five million dollars ($5,000,000,000.00), exclusive of interest and costs.

11.    Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

## PARTIES

12.    At all relevant times, Plaintiff Chandler McFall has resided in Siskiyou County, California. Ms. McFall is the parent of a child—K.R.—who was an infant when she first purchased Infants' Product.

13.    At all relevant times, Plaintiff Kailey McDonald has resided in Los Angeles County, California. Ms. McDonald is the parent of a child—P.A.—who was an infant when she first purchased Infants' Product.

14.    Defendant Walmart Inc. is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the State of Delaware with headquarters at 702 SW 8th Street, Bentonville, Arkansas 72716. Defendants can sue and be sued in this Court.

15.    Defendant Perrigo Company is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the State of Delaware with its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010. Defendants can sue and be sued in this Court.

## FACTUAL ALLEGATIONS

### Acetaminophen and the Product

16.    Acetaminophen is an active ingredient in hundreds of over-the-counter (OTC) and prescription medications. It relieves pain and fever.

17.    Acetaminophen is marketed for infants under brand names such as Infants' Tylenol, Little Fevers Infant Fever/Pain Reliever, Pedia Care Fever Reduce Pain Reliever and Triaminic Infants' Syrup Fever Reducer Pain Reliever.

18.    Prior to the acts complained of herein, acetaminophen for infants was only available with a concentration of 80 mg/mL of acetaminophen, and acetaminophen for children was only available with a concentration of 160 mg/5 mL of acetaminophen.

19.    The different concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, causing them to overdose.

20.    In 1995, a lawsuit in the San Francisco County Superior Court brought to light a potential for confusion between acetaminophen products marketed for use by infants versus children stemming from the different concentrations.

21.    Between 2000 and 2009 the FDA received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied directly to mix-ups involving the two pediatric medicines.

22.    In an industry-wide effort to prevent the ongoing confusion and additional accidental acetaminophen toxicity, in 2011, manufacturers voluntarily changed the liquid acetaminophen marketed for infants from 80 mg per 0.8mL or 80mg per 1mL to be the same concentration as the liquid acetaminophen marketed for children – 160 mg per 5mL.

CLASS ACTION COMPLAINT

23.    Since then, the only difference in acetaminophen products marketed for infants and children (including Defendants' Infants' Product and Children's Product) has been the price and the plastic dosing instrument included with the product.

24.    Defendants' Infants' Product and Children's Product have the same concentration of acetaminophen, are thus interchangeable – equally suitable for infants and children.

25.    Since the formula change in 2011, Walmart and Perrigo have been engaging in the unfair, unlawful, and deceptive practice of manufacturing, marketing and selling the store brand pediatric acetaminophen as two separate products (one marketed for use in infants and the other for children), such that parents and caregivers mistakenly believe they must purchase the more expensive Infants' Product for their infants.

26.    Defendants mislead consumers by using deceptive marketing techniques which obscure critical facts from consumers nationwide—most critically, the fact that infants can safely take Children's Products and that the Products are exactly the same.

27.    Defendants deceive consumers into buying the deceptively-labeled Infants' Products for infants, which cost significantly more than the Children's Products, even though both Products are identically-formulated and contain the same amount of acetaminophen in the same dosage amounts.

28.    In the pharmaceutical industry, there are various conventions that are applied in sub-dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: "infant" means 1 month to 2 years, and "children" means 2 to 12 years.[2] Similarly, Centers for Disease Control and Prevention ("CDC")

---

[1]  Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.
[2]  http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited August 20, 2020)

CLASS ACTION COMPLAINT

define "infants" as being "0-1 year of age,"[3] while the American Academy of Pediatrics has a guide titled "Infant Food and Feeding"[4] which identifies infants as being between ages 0 and 12 months.[5] Consumers may reasonably believe that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months to two years old.

29.    Defendants distribute, market, and sell the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

30.    The front of the box of the Infants' Product displays a parent pushing a stroller. The outer packaging also includes the following statements, among others:

a.    "**Infants'**" (in distinctive multi-colored lettering)

b.    "Compare to Infants' Tylenol Oral Suspension active ingredient"

A true and correct copy of the front of the Infants' Product packaging is pictured below:



---

[3] Child Development – Positive Parenting Tips – Infants (0-1 year) (available at https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html) (last visited August 20, 2020).
[4] AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Food-and-Feeding.aspx) (last visited August 20, 2020).
[5] *Id.* at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Timeline.aspx).

6

31.    While the packaging compares the Infants' Product to a name-brand counterpart (also purportedly formulated exclusively and specifically for infants), it does not state that it is also the same medicine contained in Children's Product. Instead, the representations and images create the opposite effect. But the lack of difference in formulations between the Infants' Product and Children's Product would be important information to consumers in deciding whether to buy Infants' Product for a number of reasons, including, *inter alia*, the difference in price between Infants' Product and Children's Product.

32.    Similarly, Defendants' Children's Product leads a reasonable consumer to believe that it consists of medicine that is specific to children, as opposed to infants. The outer packaging also includes the following statements, among others:

a.    "**Children's**" (in distinctive multi-colored lettering)

b.    "Compare to Children's Tylenol Oral Suspension active ingredient"

A true and correct copy of the front of the Children's Product packaging is pictured below:



33.    Like the packaging of the Infants' Product, nowhere on the label of the Children's Product do Defendants state that the formulation of the two medicines is entirely identical.

34.    Despite this fact, the Infant Product retails for $3.94 for two ounces of medicine, while the Children's Product retails for $2.88 for four ounces of medicine. Accordingly, the Infant Product costs over two times as much per ounce than the Children's Product despite being identical. There is a similarly significant price differential throughout the Class Period.

35.    Defendants know that parents and caregivers, such as Plaintiffs, are particularly cautious about what medicine they give to their infants. Indeed, parenting resources express the conventional understanding that infants should not, and *cannot*, tolerate medicines meant for older children. For example, the popular parenting website "What to Expect" warns "**Always use the infant formulations; never give your baby a medication intended for older kids or adults.**"[6] This conventional understanding holds particularly true for parents when they are giving their infant a medicine that has caused accidental deaths in the past.

36.    While Defendants know that their more expensive Infants' Product is identical to their Children's Product, its deceptive labeling (described in paragraphs 30-31, *supra*) exploits parents' conventional understanding that parents and caregivers will purchase medicine titled "Infants'" when purchasing medicine for their babies. Defendants' misrepresentations and omissions would be important to a reasonable consumer in deciding whether or not to purchase the Infants' Product.

37.    Defendants' deceptive and misleading advertising, marketing, packaging and sales practices harness the fear of acetaminophen toxicity to trick consumers, including Plaintiffs, into purchasing and overpaying for Infants' Product when Children's Product would be just as safe and effective at a fraction of the price.

___

[6] Colleen de Bellefonds, "Children's Medication Safety Tips and Guidelines." What to Expect (Jan. 22, 2019) (available at https://www.whattoexpect.com/family/childrens-health-and-safety/medication-safety-guidelines-tips#:~:text=Always%20use%20the%20infant%20formulations,baby%20in%20a%20sitting%20position.) (emphasis added).

CLASS ACTION COMPLAINT

**Plaintiffs' Respective Purchases of the Product**

  **Plaintiff McFall**

  38.   When K.R. was about six weeks old, during September, 2019, she developed a cold. Ms. McFall took her to a doctor, who recommended acetaminophen for K.R.'s symptoms.

  39.   Ms. McFall went to the over-the-counter medicine section at a Walmart located in Yreka, California.

  40.   Ms. McFall saw that Defendants' Infants' Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as K.R. (and pharmacologically distinct from Defendants' Children's Product or any other children's acetaminophen product).

  41.   Ms. McFall then purchased Infants' Product from Walmart.

  42.   In the following months, and throughout K.R.'s infancy, Ms. McFall made several additional purchases of Infants' Product at her local Walmart retail location.

  **Plaintiff McDonald**

  43.   When P.A. was four months old, in February 2020, P.A.'s doctor informed Ms. McDonald that she could administer acetaminophen to P.A. for pain resulting from teething.

  44.   Ms. McDonald went to the over-the-counter medicine section at a Walmart retail location.

  45.   Ms. McDonald saw that Defendants' Infants' Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as P.A. (and pharmacologically distinct from Defendants' Children's Product or any other children's acetaminophen product).

  46.   Ms. McDonald then purchased Infants' Product from Walmart.

  47.   During both Plaintiffs' interactions with the Infants' Products at the store, Plaintiffs saw and relied upon the Infants' Products packaging and labeling, which

9

was materially similar to the packaging and labeling described and pictured in paragraph 30.

48.    Specifically, both Plaintiffs saw Defendants' Infants' Product and, based on the packaging, believed it to be specifically formulated for—or otherwise to be used exclusively for—infants such as K.R and P.A. and purchased the Infants' Product from Walmart because of those representations.

49.    Plaintiffs purchased the Infants' Product because, based on the label's representations, they believed that the Infants' Product was specifically formulated for—or otherwise to be used exclusively for—infants based on the marketing and labeling of the Infants' Product. Plaintiffs believed that the Infants' Product was different than the Children's Product. If Plaintiffs knew that the Infants' Product was not specially formulated for—or otherwise to be used exclusively for—infants, they would not have purchased it.

50.    Had Defendants not made the misleading and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed on the front label, Plaintiffs would not have been willing to pay the premium for the Infants' Products, or to purchase the Infants' Product at all. Plaintiffs purchased and paid substantially more for the Infants' Product than they would have if he had known the truth. The Infants' Product that Plaintiffs purchased was worth less than the Infants' Product for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendants' deceptive conduct.

51.    Plaintiffs would like to purchase "Infants" products from Defendants in the future and regularly visit retail locations where such products are sold. If Plaintiffs knew that the Infants' Product's labels were truthful and not misleading, they would purchase the Infants' Product in the future.

52.    At present, however, Plaintiffs cannot purchase the Infants' Product

CLASS ACTION COMPLAINT

because they remain unsure as to whether the labeling of the Product is, and will be, truthful and non-misleading. If the Infants' Product was in fact different from the Children's Product, or if it were disclosed that the Infants' Product is the same as the Children's Product, Plaintiffs would purchase the Infants' Product in the future.

## **RULE 9(b) ALLEGATIONS**

53.    Defendants made—and continue to make—material misrepresentations and failed—and continue to fail—to adequately disclose that the Infant's Product is simply the Children's Product sold at a higher price. Except as identified herein, Plaintiffs and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals employed by, or on behalf of, Defendants who are responsible for such material misrepresentations and omissions.

54.    Defendants made—and continue to make—material misrepresentations regarding the Infants' Product. Specifically, at all times relevant to this action, Defendants have labeled, marketed, and sold the Infants' Product in a manner that indicates to reasonable consumers that they are more appropriate for infants than the Children's Product (and indeed should be used to the exclusion of the Children's Product when caring for infants) to justify charging the inflated price for Infants' Product. These representations are misleading because the Infants' Product is the same as the Children's Product.

55.    Defendants' advertising, labeling, and marketing of the Product has contained the material misrepresentations, omissions, and non-disclosures continuously on every package for the Infants' Product throughout the Class Period.

56.    Defendants have made numerous misrepresentations in the advertising, labeling, and marketing for the Products that were designed to, and in fact did, mislead Plaintiffs and Class members into purchasing Infants' Products.

57.    Defendants made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase or otherwise pay a price premium for Infants' Products based

on the mistaken belief that Infants' Products were specifically formulated for infants. Defendants profited by selling Infants' Products to thousands or more of unsuspecting consumers.

## TOLLING

### A.    Discovery Rule Tolling

58.    Class Members had no way of knowing about Defendants' deceptive practices with respect to the marketing of their Infants' Product and Children's Product. Defendants' marketing of the respective products makes clear that they tried to hide the true facts, that there is no pharmacological difference between the two products despite the deceptive labeling of their Infants' Product, as described herein.

59.    Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were hiding their true practices.

60.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

### B.    Fraudulent Concealment Tolling

61.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

62.    Instead of disclosing their true practices, Defendants falsely represented that there was a meaningful difference between their Infants' Product and Children's Product, and that the former should be used by infants, while the latter should be used by children.

## C.  Estoppel

63.  Defendants were under a continuous duty to disclose to Plaintiffs and other Class Members the true character, quality, and nature of their acetaminophen products, including Infants' Product and Children's Product.

64.  Defendants knowingly, affirmatively, and actively concealed true facts from consumers.

65.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

66.  Plaintiffs bring this action as a class action on their own behalf and on behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, costs and attorneys' fees. Plaintiffs seek certification of this action as a class action on behalf of the following class (the "Class"):

> All persons who purchased the Infants' Product for personal use and not for resale in the United States.

67.  The following persons are excluded from the Class: Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

68.  The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, there are in excess of a thousand members of the Class. Discovery will reveal, through Defendants' records, the approximate number of Class members.

69.  Plaintiffs' claims are typical of the Class. Plaintiffs, like all members of the Class, have been subjected to Defendants' deceptive and misleading marketing

(including the packaging) for Infants' Product. The harm suffered by Plaintiffs and the Class was and is caused by the same misconduct by Defendants.

70.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Plaintiffs are members of the Class described herein and do not have interests antagonistic to, or in conflict with, the other members of the Class.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants would likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

72.     Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

a. Whether Defendants' marketing, advertising, labeling, and packaging of Infants' Product is likely to deceive reasonable consumers;

b. Whether Defendants' marketing, advertising, labeling, and packaging of Infants' Product caused Plaintiffs and the Class to suffer economic harm;

c. Whether Defendants violated California Business and Professions Code §§ 17200, *et seq*;

d. Whether Defendants violated California Business and Professions Code §§ 17500, *et seq*;

e. Whether Defendants violated California Civil Code §§ 1750, *et seq*;

f. Whether Defendants' representations and omissions are material to reasonable consumers; and,

CLASS ACTION COMPLAINT

g.  Whether Plaintiffs and the Class are entitled to restitution and if so, the appropriate measure.

73.  Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

74.  The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendants. Prosecution as a class action will eliminate the possibility of repetitious litigation.

75.  Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Moreover, Plaintiffs continue to have use for OTC pain-relief products for children. If the Court were to grant an injunction enjoining Defendants from making the misrepresentations described above, then Plaintiffs would consider purchasing Infants' Product in the future. Without an injunction, Plaintiffs would be unable to trust Defendants' representations and would not purchase Infants' Product.

## FIRST CAUSE OF ACTION
### Violations of California's False Advertising Law (FAL)
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

76.  Plaintiffs herby incorporate paragraphs 1-75 as if fully set forth herein.

77.  In marketing, advertising, labeling, and packaging Infants' Product, Defendants made, and continue to make, misleading statements and omissions in order to induce consumers into purchasing Infants' Product on a false premise.

78.  In marketing, advertising, labeling, and packaging Infants' Product, Defendants failed and continue to fail to make material disclosures, including a

1  statement that Infants' Product is the same product as Children's Product.

2      79.    Defendants are aware that the claims they make about Infants' Product

3  are deceptive, misleading, without basis, and unreasonable.

4      80.    Defendants engaged in the deceptive conduct alleged above to induce the

5  public to purchase the more expensive Infants' Product instead of Children's Product.

6      81.    In marketing, advertising, labeling, and packaging Infant's Product

7  described above, Defendants knew or should have known their statements regarding

8  the uses and characteristics of Infants' Product were false and misleading.

9      82.    Defendants' misrepresentations of the material facts detailed above

10  constitute unfair and fraudulent business practices within Cal. Bus. & Prof. Code §

11  17200.

12      83.    There were reasonably available alternatives to further Defendants'

13  legitimate business interests, other than the conduct described herein.

14      84.    All of the conduct alleged herein occurs and continues to occur in

15  Defendants' business. Defendants' wrongful conduct is part of a course of conduct

16  repeated on hundreds if not thousands of occasions every day.

17      85.    Plaintiffs and the Class were misled into purchasing Infants' Product by

18  Defendants' deceptive conduct and misleading advertising as alleged above.

19      86.    Plaintiffs and the Class were misled and, because the misrepresentations

20  and omissions were uniform and material, they believed that Infants' Products have

21  benefits which they do not; namely that they are uniquely suited or the only safe

22  product for infants.

23      87.    In addition, Defendants' use of the Product's packaging as advertising

24  and marketing have deceived and are likely to continue deceiving the consuming

25  public, in violation of Cal. Bus. & Prof. Code § 17500.

26      88.    Plaintiffs and the Class have suffered injury in fact and have lost money

27  as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and

28  the Class purchased Infants' Product because of Defendants' misrepresentations that

Infants' Product is specially formulated or otherwise uniquely suitable for infants. Plaintiffs and the Class would not have purchased Infants' Product if they had known that the advertising and representations as described herein were false.

## SECOND CAUSE OF ACTION
### Violations of Consumers Legal Remedies Act (CLRA)
### Cal. Civ. Code §§ 1750, *et seq.*

89.    Plaintiffs herby incorporate paragraphs 1-75 as if fully set forth herein.

90.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money as a result of Defendants' actions as set forth herein.

91.    At all times relevant hereto, each Defendant is a "person" as defined in Cal. Civ. Code § 1761(d).

92.    At all times relevant hereto, Defendants' Infants' Product is a "good" as defined in Cal. Civ. Code § 1761(d).

93.    At all relevant times hereto, Plaintiffs' and Class members' purchases of Infants' Product constitute "transactions" as defined in Cal. Civ. Code § 1761(e).

94.    The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

    a.    Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have;

    b.    Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,

    c.    Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

95.     Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(5) by representing that the Infants' Product has sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

96.     Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(9) by advertising the Infants' Product with the intent not to sell it as advertised.

97.     Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(16) by representing the Infants' Product has been supplied in accordance with previous representations when it has not.

98.     Defendants have violated and continue to violate Cal. Civ. Code §§ 1770(a)(5), (a)(9) and (a)(16) by deceiving consumers into believing the Infants' Product is specially formulated or otherwise medicinally unique for infants, as described more fully above. Indeed, Plaintiffs relied on the Infants' Product packaging before purchasing.

99.     Defendants' misrepresentations and omissions were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

100.     Defendants knew the Infants' Product were not specially formulated or medicinally unique for infants.

101.     Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. Code § 1780(d).

102.     The policies, acts, and practices hereto described were intended to result in the sale of the Infants' Product to the consuming public, particularly to cautious parents with sick babies who needed medicine, and violated and continue to violate Cal. Civ. Code § 1770(a)(5) of the act by representing that Infants' Product has characteristics, benefits, uses, or quantities which it does not have.

103.     Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights and the rights of Class members, and Defendants have

acted wantonly and maliciously in their concealment of the same.

104.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants continue to make the same misrepresentations and omit material information regarding Infants' Product.

105.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs currently seek restitution and an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court.

106.    Concurrent with the filing of this Complaint, Plaintiffs sent Defendants notice advising Defendants that it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complied in all respects with Section 1782 of the CLRA. Plaintiffs sent the Notice by Certified U.S. Mail, return-receipt requested to Defendants at Defendants' principal place of business. Plaintiffs' Notice advised Defendants that they must correct, repair, replace or otherwise rectify their conduct alleged to be in violation of Section 1770 within 35 days. If Defendants fail to do so, Plaintiff will amend this Complaint to seek damages.

## THIRD CAUSE OF ACTION
### Violations of Unfair Competition Law (UCL)
### 'Unfair' and 'Fraudulent' Prongs
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

107.    Plaintiffs herby incorporate paragraphs 1-75 as if fully set forth herein.

108.    As alleged above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and lost money or property as a result of Defendants' actions. Specifically, prior to the filing of this action, Plaintiffs purchased Infants' Product for their own personal household use. In so doing, Plaintiffs relied on Defendants' misrepresentations and omissions of material facts, as alleged in detail above. Had Defendants disclosed on the packaging that Infants' Product and Children's Product are identical, Plaintiffs would not have purchased the more expensive Infants' Product.

109.    Defendants' conduct in marketing, advertising, labeling, and packaging Infants' Product is likely to deceive reasonable consumers. For example, no reasonable consumer would be willing to pay 200% more for Infants' Product unless they had good reason to believe that the Infant's Product was the only safe medicine for an infant. Defendants harness parents' and caregivers' fear of inadvertently harming their infants by administering age-inappropriate medicine, which leads parents and caregivers of infants to seek out medication labeled as being for "infants."

110.    Defendants are aware that the claims they make about Infants' Product are deceptive, false and misleading. Defendants are also aware consumers with babies, such as Plaintiffs and members of the Class, are typically more cautious about what medicine to give their baby, especially when they are giving their baby a product that in the past has caused accidental deaths.

111.    The misrepresentations by Defendants constitute unfair and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

112.    Defendants' business practices, as alleged herein, are unfair because: (1) the injury to consumers is substantial—they were deceived into thinking Infants' Product was specially formulated or otherwise unique for infants; (2) the injury is not outweighed by countervailing benefits to consumers or competition, as there can be no benefit to consumers where they are required to pay up to twice the price for the same medicine; (3) consumers could not reasonably have avoided the injury because Defendants intentionally misled the consuming public by means of their advertising, marketing and labeling of Infants' Product.

113.    Defendants' business practices are also unfair because their conduct in selling, advertising, marketing and labeling Infants' offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to specific constitutional and statutory provisions, including California's consumer protection statutes.

114.    Defendants' wrongful business practices constitute a continuing course

of conduct of unfair competition since Defendants are marketing and selling Infants'
Product in a manner likely to deceive the public.

115.    Defendants have peddled, and continue to peddle, their
misrepresentations through a national advertising campaign.

116.    In addition, Defendants' use of the packaging to call attention to or give
publicity to the sale of goods or merchandise which are not as represented constitutes
unfair competition, unfair, deceptive, untrue or misleading advertising, and an
unlawful business practice within the meaning of Cal. Bus. & Prof. Code §§ 17200,
*et seq*.

117.    There were reasonably available alternatives to further Defendants'
legitimate business interests, other than the conduct described above.

118.    Plaintiffs and members of the Class were misled into purchasing the
Infants' Product by Defendants' deceptive and fraudulent conduct as alleged above.

119.    Plaintiffs and members of the Class were misled and, because the
misrepresentations and omissions were uniform and material, presumably believed
Infants' Product was specially formulated or unique for infants.

120.    Pursuant to section 17203 of the UCL, Plaintiffs and members of the
Class seek an order of this Court enjoining Defendants from engaging in the unfair
and fraudulent business practices alleged herein in connection with the sale of Infants'
Product.

121.    Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class
restitution of the money wrongfully acquired by Defendants by means of the unfair
and fraudulent business practices alleged herein.

**FOURTH CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL)**
**'Unlawful' Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

122.    Plaintiffs herby incorporate paragraphs 1-74 as if fully set forth herein.

123.    Defendants' actions, as alleged herein, constitute illegal and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

124.    Defendants are unlawfully labeling, selling, marketing and advertising Infants' Product. Indeed, Defendants' violations of the FAL, CLRA and the UCL, as alleged above, constitute predicate acts, which violate the UCL's "unlawful" prong.

125.    Plaintiffs and members of the Class were misled because Defendants' misrepresentations and omissions, described above, were uniform and material. Plaintiffs reasonably relied on those misrepresentations and material omissions, believing based thereon that Infants' Product was specially formulated or otherwise unique for infants. As a result of Defendants' misrepresentations and omissions, Plaintiffs and members of the Class lost money or property.

126.    Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendants from engaging in the unlawful business practices alleged herein in connection with the sale of Infants' Product.

127.    Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair and fraudulent business practices alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action and that Plaintiffs be appointed the Class Representatives and their undersigned counsel as Class Counsel;

B.    An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.    Pre-judgment interest from the date of filing this suit;

D.    Restitution;

CLASS ACTION COMPLAINT

E.      Reasonable attorneys' fees;

F.      Costs of this suit; and,

G.      Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, by and through their undersigned counsel, hereby request a trial by jury as to all issues so triable.

August 25, 2020

Respectfully submitted,
  /s/ Gillian L. Wade

Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates, California State Bar No. 167688
hbates@cbplaw.com
David Slade (to apply *pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (to apply *pro hac vice*)
mweiner@pswlaw.com
Joseph C. Bourne (SBN 308196)
jbourne@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

CLASS ACTION COMPLAINT

**EDELSBERG LAW, P.A.**
Scott Edelsberg, California State Bar No. 330990
scott@edelsberglaw.com
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

**DAPEER LAW, P.A.**
Rachel Dapeer (to apply *pro hac vice*)
Rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5523

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (to apply *pro hac vice*)
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT