**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates, California State Bar No. 167688
hbates@cbplaw.com
David Slade (to apply *pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

(Additional Counsel on Signature Page)

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANDLER McFALL and KAILEY McDONALD, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>PERRIGO COMPANY, and WALMART INC.,<br><br>Defendants. | Case No.  2:20-cv-07752-FMO-MRW<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br>1.  Violations of California's False Advertising Laws, <u>Cal. Bus. & Prof. Code</u> §§ 17500, *et seq.*<br><br>2.  Violations of California Consumers Legal Remedies Act, <u>Cal. Civ. Code</u> §§ 1750, *et seq.*<br><br>3.  Violations of California's Unfair Competition Laws, 'Unfair' and 'Fraudulent' Prongs; <u>Cal. Bus. & Prof. Code</u> §§ 17200, *et seq.*<br><br>4.  Violations of California's Unfair Competition Laws, 'Unlawful' Prong; <u>Cal. Bus. & Prof. Code</u> §§ 17200, *et seq.* |

Plaintiffs Chandler McFall and Kailey McDonald ("Plaintiffs"), by their undersigned counsel, on behalf of themselves and all persons similarly situated who purchased Equate Infant's Pain & Fever Acetaminophen, bring this First Amended Class Action Complaint against Defendants Walmart Inc. ("Walmart"), and Perrigo Company ("Perrigo") (collectively, "Defendants"). Plaintiffs allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1.      Walmart is an American multinational retail corporation that operates a chain of hypermarkets with over 4,700 retail locations throughout the United States, more than 300 of which are in California.

2.      Walmart's private label brands provide a huge source of revenue for the retailer. Since at least 2018, the focus on its private label offerings has "play[ed] a really important part" in the company's business model, per Walmart's Chief Financial Officer, Brett Biggs. A 2018 report found that 84% of Walmart's customers purchase its private brand products. Seventy percent of consumers say they purchase private label products in order to save money. As a whole, Walmart's private label products are generally more profitable for Walmart than the name-brand products it sells.

3.      Walmart sells consumable pharmacy and health and beauty items through one of its strongest private label brands, Equate. Included in the Equate brand portfolio are its over-the-counter pain reliever and fever reducers, including Equate Infant's Pain & Fever Acetaminophen ("Infant's Product" or the "Product"). Walmart positions its private label product as a "national brand equivalent," selling it alongside brand-name acetaminophen products, such as Infant's Tylenol.

4.      Perrigo is a manufacturer of private label over-the-counter pharmaceuticals. Upon information and belief, Defendant Perrigo manufactures and labels all Equate brand acetaminophen suspension liquids for distribution in Walmart

retail stores, including the Infant's Product. Defendant Perrigo works in conjunction with Defendant Walmart to print and introduce into the stream of commerce the deceptive labeling described herein, thereby contributing materially to the deception of consumers, and similarly profiting—in conjunction with Defendant Walmart—from such deceptive conduct. Defendant Perrigo knows that the respective Infant's Products and Children's Products are pharmacologically identical (indeed, Perrigo manufactures the respective medicines), yet at all times relevant to this litigation Perrigo has intentionally contributed to the deception of consumers.

5.     Giving a child too much acetaminophen can be dangerous and even fatal, a problem that terrifies parents and caregivers and causes them to be extra careful when buying medicine for their young children and babies. The FDA warns parents and caregivers to "[b]e very careful when you're giving your infant acetaminophen." Defendants' packaging for their Infant's Product exploits parents' and caregivers' fear of giving their children an improper (and possibly fatal) dosage or formulation. Defendants do this by designing its packaging to mislead a parent into thinking that the Infant's Product is specially-formulated, or otherwise possesses some unique medicinal quality, to make it specifically appropriate for infants as opposed to older children. The front of a box of the Infant's Product contains representations, including, *inter alia*, the name of the product itself and a picture of a mother pushing an infant in a stroller, which are likely to deceive consumers into believing that the Infant's Product is specially formulated for infants or otherwise unique for infants.

6.     In reality, the medicine contained in a bottle of the Infant's Product contains the same active ingredient and formulation (*i.e.* 160 mg per 5 mL of acetaminophen) that is contained in a bottle of the Equate Children's Pain & Fever Acetaminophen Oral Suspension ("Children's Product"), which is also manufactured and labeled by Defendants. Thus, there is no difference in the medicine sold in the Infant's Product and the Children's Product. But Defendants do not disclose this important information anywhere on the Infant's Product packaging. Instead, the front

of the box explicitly compares the Product to name-brand Infant's Tylenol. Accordingly, representing to consumers that the Infant's Products are somehow different or specially formulated so that they—and they alone—should be used in caring for infants deceives reasonable consumers.

7.     This material omission causes consumers economic damage because Walmart charges substantially more money for its Infant's Product—as much as twice as much per ounce—than for its Children's Product. In other words, the measure of damages (*i.e.* the price premium for the Infant's Product) can easily be calculated because the medicines are identical.

## **JURISDICTION AND VENUE**

8.     Plaintiffs and all members of the proposed Class are or were citizens of the State of California during all times relevant herein.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and conduct giving rise to the violations of law occurred in this District. This includes the transaction at issue—Plaintiffs' purchase of the Product.

10.     Defendants are publicly-traded corporations authorized to do business in the State of California, and, at all relevant times hereto, were engaged in the manufacturing, labeling, packaging marketing and sale of the Product in the State of California.

11.     This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that there is minimal diversity and the aggregate amount in controversy exceeds five million dollars ($5,000,000,000.00), exclusive of interest and costs.

12.     Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:20-cv-07752-FMO-MRW

**PARTIES**

13.   At all relevant times, Plaintiff Chandler McFall has resided in Siskiyou County, California. Ms. McFall is the parent of a child—K.R.—who was an infant when she first purchased Infant's Product.

14.   At all relevant times, Plaintiff Kailey McDonald has resided in Los Angeles County, California. Ms. McDonald is the parent of a child—P.A.—who was an infant when she first purchased Infant's Product.

15.   Defendant Walmart Inc. is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the State of Delaware with headquarters at 702 SW 8th Street, Bentonville, Arkansas 72716. Defendants can sue and be sued in this Court.

16.   Defendant Perrigo Company is, and at all times mentioned in this Complaint was, a publicly traded corporation organized and existing under the laws of the State of Delaware with its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010. Defendants can sue and be sued in this Court.

**FACTUAL ALLEGATIONS**

**Acetaminophen and the Product**

17.   Acetaminophen is an active ingredient in hundreds of over-the-counter (OTC) and prescription medications. It relieves pain and fever.

18.   Acetaminophen is marketed for infants under brand names such as Infant's Tylenol, Little Fevers Infant Fever/Pain Reliever, Pedia Care Fever Reduce Pain Reliever and Triaminic Infant's Syrup Fever Reducer Pain Reliever.

19.   Prior to the acts complained of herein, acetaminophen for infants was only available with a concentration of 80 mg/mL of acetaminophen, and acetaminophen for children was only available with a concentration of 160 mg/5 mL of acetaminophen.

20.   The different concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, causing them to overdose.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:20-cv-07752-FMO-MRW

21.   In 1995, a lawsuit in the San Francisco County Superior Court brought to light a potential for confusion between acetaminophen products marketed for use by infants versus children stemming from the different concentrations.

22.   Between 2000 and 2009 the FDA received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied directly to mix-ups involving the two pediatric medicines.

23.   In an industry-wide effort to prevent the ongoing confusion and additional accidental acetaminophen toxicity, in 2011, manufacturers voluntarily changed the liquid acetaminophen marketed for infants from 80 mg per 0.8mL or 80mg per 1mL to be the same concentration as the liquid acetaminophen marketed for children – 160 mg per 5mL.

24.   Since then, the only difference in acetaminophen products marketed for infants and children (including Defendants' Infant's Product and Children's Product) has been the price and the plastic dosing instrument included with the product.

25.   Defendants' Infant's Product and Children's Product have the same concentration of acetaminophen, and are thus interchangeable – equally suitable for infants and children.

26.   Since the formula change in 2011, Walmart and Perrigo have been engaging in the unfair, unlawful, and deceptive practice of manufacturing, marketing and selling the store brand pediatric acetaminophen as two separate products (one marketed for use in infants and the other for children), such that parents and caregivers mistakenly believe they must purchase the more expensive Infant's Product for their infants.

27.   Defendants mislead consumers by using deceptive marketing techniques which obscure critical facts from consumers nationwide—most critically, the fact that infants can safely take Children's Products and that the Products are exactly the same.

28.   Defendants deceive consumers into buying the deceptively-labeled Infant's Products for infants, which cost significantly more than the Children's

5

Products, even though both Products are identically-formulated and contain the same amount of acetaminophen in the same dosage amounts.

29.    In the pharmaceutical industry, there are various conventions that are applied in sub-dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: "infant" means 1 month to 2 years, and "children" means 2 to 12 years.[2] Similarly, Centers for Disease Control and Prevention ("CDC") define "infants" as being "0-1 year of age,"[3] while the American Academy of Pediatrics has a guide titled "Infant Food and Feeding"[4] which identifies infants as being between ages 0 and 12 months.[5] Consumers may reasonably believe that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months to two years old.

30.    Defendants distribute, market, and sell the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

31.    The front of the box of the Infant's Product displays a parent pushing an infant in a stroller. The outer packaging also includes the following statements, among others:

  a.  The name of the product: "**Infant's**" (in distinctive multi-colored lettering)

  b.  "Compare to Infant's Tylenol Oral Suspension active ingredient"

---

[1] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.

[2] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited August 20, 2020)

[3] Child Development – Positive Parenting Tips – Infants (0-1 year) (available at https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html) (last visited August 20, 2020).

[4] AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Food-and-Feeding.aspx) (last visited August 20, 2020).

[5] Id. at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Timeline.aspx).

A true and correct copy of the front of the Infant's Product packaging is pictured below:



32. While the packaging specifically states that the Infant's Product is comparable to a name-brand counterpart (also purportedly formulated exclusively and specifically for infants), it does not state that it is also the same medicine contained in the Children's Product. The fact that the Infant's Products and Children's Products are identical would be important information to consumers in deciding whether to buy Infant's Product for a number of reasons, including, *inter alia*, the difference in price between Infant's Product and Children's Product.

33. Similarly, Defendants' Children's Product leads a reasonable consumer to believe that it consists of medicine that is specific to children, as opposed to infants. The outer packaging also includes the following statements, among others:

a. "**Children's**" (in distinctive multi-colored lettering)

b. "Compare to Children's Tylenol Oral Suspension active ingredient"

A true and correct copy of the front of the Children's Product packaging is pictured below:

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:20-cv-07752-FMO-MRW

1
2
3
4
5
6
7
8
9
10



11     34.   Like the packaging of the Infants' Product, nowhere on the label of the
12 Children's Product do Defendants state that the formulation of the two medicines is
13 entirely identical.

14     35.   Defendants know that parents and caregivers, such as Plaintiffs, are
15 particularly cautious about what medicine they give to their infants. Indeed, parenting
16 resources express the conventional understanding that infants should not, and *cannot*,
17 tolerate medicines meant for older children. For example, the popular parenting
18 website "What to Expect" warns "**Always use the infant formulations; never give**
19 **your baby a medication intended for older kids or adults.**"[6] This conventional
20 understanding holds particularly true for parents when they are giving their infant a
21 medicine that has caused accidental deaths in the past.

22     36.   While Defendants know that their Infant's Product is identical to their
23 Children's Product, its deceptive labeling (described above) exploits parents'
24 conventional understanding that parents and caregivers will purchase medicine titled

25

26 [6] Colleen de Bellefonds, "Children's Medication Safety Tips and Guidelines." What
   to Expect (Jan. 22, 2019) (available at
27 https://www.whattoexpect.com/family/childrens-health-and-safety/medication-
   safety-guidelines-
28 tips#:~:text=Always%20use%20the%20infant%20formulations,baby%20in%20a%
   20sitting%20position.) (emphasis added).

"Infant's" when purchasing medicine for their babies. Defendants' misrepresentations and omissions would be important to a reasonable consumer in deciding whether or not to purchase the Infant's Product.

37.   Defendants' deceptive and misleading advertising, marketing, packaging and business practices harness the fear of acetaminophen toxicity to trick consumers, including Plaintiffs, into purchasing and overpaying for Infant's Product when Children's Product would be just as safe and effective at a fraction of the price.

38.   Consumers are injured by Defendant's deceptions. For example, the Infant's Product retails for approximately $3.94 for two ounces of medicine, while the Children's Product retails for approximately $2.88 for four ounces of medicine. Accordingly, the Infant's Product costs over two times as much per ounce than the Children's Product despite being identical. There has been a similarly significant price differential throughout the Class Period.

**Plaintiffs' Respective Purchases of the Product**

    **Plaintiff McFall**

39.   When K.R. was about six weeks old, during September, 2019, she developed a cold. Ms. McFall took her to a doctor, who recommended acetaminophen for K.R.'s symptoms.

40.   Ms. McFall went to the over-the-counter medicine section at a Walmart located in Yreka, California.

41.   Ms. McFall saw that Defendants' Infant's Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as K.R. (and pharmacologically distinct from Defendants' Children's Product or any other children's acetaminophen product).

42.   Ms. McFall then purchased Infant's Product from Walmart.

43.   In the following months, and throughout K.R.'s infancy, Ms. McFall made several additional purchases of Infant's Product at her local Walmart retail location.

**Plaintiff McDonald**

44.   When P.A. was four months old, in February 2020, P.A.'s doctor informed Ms. McDonald that she could administer acetaminophen to P.A. for pain resulting from teething.

45.   Ms. McDonald went to the over-the-counter medicine section at a Walmart retail location.

46.   Ms. McDonald saw that Defendants' Infant's Product was marketed for babies, and, based on the packaging, believed it to be specifically formulated for babies such as P.A. (and pharmacologically distinct from Defendants' Children's Product or any other children's acetaminophen product).

47.   Ms. McDonald then purchased Infant's Product from Walmart.

48.   During both Plaintiffs' interactions with the Infant's Products at the store, Plaintiffs saw and relied upon the Infant's Products packaging and labeling, which was materially similar to the packaging and labeling described and pictured in paragraph 30.

49.   Specifically, both Plaintiffs saw Defendants' Infant's Product and, based on the packaging, believed it to be specifically formulated for—or otherwise to be used exclusively for—infants such as K.R and P.A. and purchased the Infant's Product from Walmart because of those representations.

50.   Plaintiffs purchased the Infant's Product because, based on the label's representations, they believed that the Infant's Product was specifically formulated for—or otherwise to be used exclusively for—infants based on the marketing and labeling of the Infant's Product. Plaintiffs believed that the Infant's Product was different than the Children's Product. If Plaintiffs knew that the Infant's Product was not specially formulated for—or otherwise to be used exclusively for—infants, they would not have purchased it.

51.   Had Defendants not made the misleading and deceptive representation that the Infant's Products were formulated and designed for "Infants," nor omitted the

fact that the Infant's Products were nothing more than the Children's Products with the word "Infants" prominently displayed on the front label, Plaintiffs would not have overpaid for the Infant's Products, or to purchase the Infant's Product at all. Plaintiffs purchased and paid substantially more for the Infant's Product than they would have if he had known the truth. The Infant's Product that Plaintiffs purchased was worth less than the Infant's Product for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendants' deceptive conduct.

52.   Plaintiffs would like to purchase "Infants" products from Defendants in the future and regularly visit retail locations where such products are sold. If Plaintiffs knew that the Infant's Product's labels were truthful and not misleading, they would purchase the Infant's Product in the future.

53.   At present, however, Plaintiffs cannot purchase the Infant's Product because they remain unsure as to whether the labeling of the Product is, and will be, truthful and non-misleading. If the Infant's Product was in fact different from the Children's Product, or if it were disclosed that the Infant's Product is the same as the Children's Product, Plaintiffs would purchase the Infant's Product in the future.

## **RULE 9(b) ALLEGATIONS**

54.   Defendants made—and continue to make—material misrepresentations and failed—and continue to fail—to adequately disclose that the Infant's Product is simply the Children's Product sold at a higher price. Except as identified herein, Plaintiffs and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals employed by, or on behalf of, Defendants who are responsible for such material misrepresentations and omissions.

55.   Defendants made—and continue to make—material misrepresentations regarding the Infant's Product. Specifically, at all times relevant to this action, Defendants have labeled, marketed, and sold the Infant's Product in a manner that indicates to reasonable consumers that they are more appropriate for infants than the Children's Product (and indeed should be used to the exclusion of the Children's

Product when caring for infants). These representations are misleading because the Infant's Product is the same as the Children's Product. Defendants then charge an inflated price for the Infant's Product.

56.     Defendants' advertising, labeling, and marketing of the Product has contained the material misrepresentations, omissions, and non-disclosures continuously on every package for the Infant's Product throughout the Class Period.

57.     Defendants have made numerous misrepresentations in the advertising, labeling, and marketing for the Products that were designed to, and in fact did, mislead Plaintiffs and Class members into purchasing Infant's Products.

58.     Defendants made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase or otherwise pay a price premium for Infant's Products based on the mistaken belief that Infant's Products were specifically formulated for infants. Defendants profited by selling Infant's Products to thousands or more of unsuspecting consumers.

## TOLLING

### A.     Discovery Rule Tolling

59.     Class Members had no way of knowing about Defendants' deceptive practices with respect to the marketing of their Infant's Product and Children's Product. Defendants' marketing of the respective products makes clear that they tried to hide the true facts, that there is no pharmacological difference between the two products despite the deceptive labeling of their Infant's Product, as described herein.

60.     Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were hiding their true practices.

61.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.    Fraudulent Concealment Tolling**

62.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

63.    Instead of disclosing their true practices, Defendants falsely represented that there was a meaningful difference between their Infant's Product and Children's Product, and that the former should be used by infants, while the latter should be used by children.

**C.    Estoppel**

64.    Defendants were under a continuous duty to disclose to Plaintiffs and other Class Members the true character, quality, and nature of their acetaminophen products, including Infant's Product and Children's Product.

65.    Defendants knowingly, affirmatively, and actively concealed true facts from consumers.

66.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

**<u>EQUITABLE RELIEF</u>**

67.    Absent an equitable injunction enjoining Defendants' conduct alleged herein, Plaintiffs, Class members, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendant's ongoing conduct which cannot be remedied with monetary damages.

68.    Plaintiffs do not know at this juncture whether the Court will accept a model for legal damages Plaintiffs will proffer in the future at the appropriate time, or whether the Court will find that any such model adequately compensates Plaintiff's

and the Class' losses. Accordingly, Plaintiffs set forth alternate claims for legal damages and equitable restitution.

69.    Similarly, as set forth herein, Defendants' material misrepresentations and omissions—displayed on the packaging of the Infant's Products and Children's Products—are ongoing and accordingly represent an ongoing threat to Plaintiffs, Class members, and members of the general public who have not yet (but who are likely to) come into contact with Defendants' misrepresentations, and who risk becoming injured thereby. Plaintiffs seek, on behalf of themselves, the Class, and the general public, an injunction prohibiting Defendants from the manufacturing, marketing and packaging of the Infant's Products that contains the misrepresentations challenged herein. Specifically, Plaintiffs, seek clear disclosures that there is no pharmacological distinction between "Infant's Product" and "Children's Product" and that the two products can be used interchangeably in a manner that is safe to infants and children alike.

## CLASS ALLEGATIONS

70.    Plaintiffs bring this action as a class action on their own behalf and on behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs and attorneys' fees. Plaintiffs seek certification of this action as a class action on behalf of the following class (the "Class"):

> All persons who purchased the Infant's Product for personal use and not for resale in the United States.

71.    The following persons are excluded from the Class: Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

72.    The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, there are in excess of a thousand members of the Class. Discovery will reveal, through Defendants' records, the approximate number of Class members.

73.    Plaintiffs' claims are typical of the Class. Plaintiffs, like all members of the Class, have been subjected to Defendants' deceptive and misleading marketing (including the packaging) for Infant's Product. The harm suffered by Plaintiffs and the Class was and is caused by the same misconduct by Defendants.

74.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Plaintiffs are members of the Class described herein and do not have interests antagonistic to, or in conflict with, the other members of the Class.

75.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants would likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

76.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

   a.    Whether Defendants' marketing, advertising, labeling, and packaging of Infant's Product is likely to deceive reasonable consumers;

   b.    Whether Defendants' marketing, advertising, labeling, and packaging of Infant's Product caused Plaintiffs and the Class to suffer economic harm;

   c.    Whether Defendants violated California Business and Professions Code

§§ 17200, *et seq*;

d.   Whether Defendants violated California Business and Professions Code §§ 17500, *et seq*;

e.   Whether Defendants violated California Civil Code §§ 1750, *et seq*;

f.   Whether Defendants' representations and omissions are material to reasonable consumers; and,

g.   Whether Plaintiffs and the Class are entitled to restitution or damages and if so, the appropriate measure.

77.   Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

78.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendants. Prosecution as a class action will eliminate the possibility of repetitious litigation.

79.   Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Moreover, Plaintiffs continue to have use for OTC pain-relief products for children. If the Court were to grant an injunction enjoining Defendants from making the misrepresentations described above, then Plaintiffs would consider purchasing Infant's Product in the future. Without an injunction, Plaintiffs would be unable to trust Defendants' representations and would not purchase Infant's Product.

//

### FIRST CAUSE OF ACTION
**Violations of California's False Advertising Law (FAL)**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

80.     Plaintiffs herby incorporate paragraphs 1-79 as if fully set forth herein.

81.     In marketing, advertising, labeling, and packaging Infant's Product, Defendants made, and continue to make, misleading statements and omissions in order to induce consumers into purchasing Infant's Product on a false premise.

82.     In marketing, advertising, labeling, and packaging Infant's Product, Defendants failed and continue to fail to make material disclosures, including a statement that Infant's Product is the same product as Children's Product.

83.     Defendants are aware that the claims they make about Infant's Product are deceptive, misleading, without basis, and unreasonable.

84.     Defendants engaged in the deceptive conduct alleged above to induce the public to purchase the Infant's Product instead of Children's Product.

85.     In marketing, advertising, labeling, and packaging Infant's Product described above, Defendants knew or should have known their statements regarding the uses and characteristics of Infant's Product were false and misleading.

86.     Defendants' misrepresentations of the material facts detailed above constitute unfair and fraudulent business practices within Cal. Bus. & Prof. Code § 17200.

87.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

88.     All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a course of conduct repeated on hundreds if not thousands of occasions every day.

89.     Plaintiffs and the Class were misled into purchasing Infant's Product by Defendants' deceptive conduct and misleading advertising as alleged above.

90.     Plaintiffs and the Class were misled and, because the misrepresentations

and omissions were uniform and material, they believed that Infant's Products have benefits which they do not; namely that they are uniquely suited or the only safe product for infants.

91.     In addition, Defendants' use of the Product's packaging as advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of Cal. Bus. & Prof. Code § 17500.

92.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendants' misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendants' misrepresentations caused consumers to suffer economic damages because Defendants charge consumers substantially more for the Infants' Product—as much as twice as much per ounce—than for its Children's Product. Plaintiffs and the Class would not have purchased the Infant's Product if they had known the truth.

## SECOND CAUSE OF ACTION
### Violations of Consumers Legal Remedies Act (CLRA)
### Cal. Civ. Code §§ 1750, *et seq.*

93.     Plaintiffs herby incorporate paragraphs 1-92 as if fully set forth herein.

94.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money as a result of Defendants' actions as set forth herein.

95.     At all times relevant hereto, each Defendant is a "person" as defined in Cal. Civ. Code § 1761(d).

96.     At all times relevant hereto, Defendants' Infant's Product is a "good" as defined in Cal. Civ. Code § 1761(d).

97.     At all relevant times hereto, Plaintiffs' and Class members' purchases of Infant's Product constitute "transactions" as defined in Cal. Civ. Code § 1761(e).

98.     The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any

person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

    a.  Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which they do not have;

    b.  Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,

    c.  Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

99.    Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(5) by representing that the Infant's Product has sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

100.    Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(9) by advertising the Infant's Product with the intent not to sell it as advertised.

101.    Defendants have violated and continue to violate Cal. Civ. Code §1770(a)(16) by representing the Infant's Product has been supplied in accordance with previous representations when it has not.

102.    Defendants have violated and continue to violate Cal. Civ. Code §§ 1770(a)(5), (a)(9) and (a)(16) by deceiving consumers into believing the Infant's Product is specially formulated or otherwise medicinally unique for infants, as described more fully above. Indeed, Plaintiffs relied on the Infant's Product packaging before purchasing.

103.    Defendants' misrepresentations and omissions were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

104.    Defendants knew the Infant's Product were not specially formulated or medicinally unique for infants.

105.    Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. Code § 1780(d).

106.    The policies, acts, and practices hereto described were intended to result in the sale of the Infant's Product to the consuming public, particularly to cautious parents with sick babies who needed medicine, and violated and continue to violate Cal. Civ. Code § 1770(a)(5) of the act by representing that Infant's Product has characteristics, benefits, uses, or quantities which it does not have.

107.    Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights and the rights of Class members, and Defendants have acted wantonly and maliciously in their concealment of the same.

108.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants continue to make the same misrepresentations and omit material information regarding Infant's Product.

109.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs currently seek restitution, damages and an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court.

110.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendants' misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendants' misrepresentations caused consumers to suffer economic damages because Defendants charge consumers substantially more for the Infants' Product— as much as twice as much per ounce—than for its Children's Product.

111.    Concurrent with the filing of the original Complaint, on or about August 25, 2020 Plaintiffs sent Defendants notice advising Defendants that it violated and

continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complied in all respects with Section 1782 of the CLRA. Plaintiffs sent the Notice by Certified U.S. Mail, return-receipt requested to Defendants at Defendants' principal place of business. Plaintiffs' Notice advised Defendants that they must correct, repair, replace or otherwise rectify their conduct alleged to be in violation of Section 1770 within 35 days. The Defendants failed to do so, and thus Plaintiff is hereby amending the original complaint to seek damages.

### THIRD CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL)**
**'Unfair' and 'Fraudulent' Prongs**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

112.    Plaintiffs herby incorporate paragraphs 1-111 as if fully set forth herein.

113.    As alleged above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and lost money or property as a result of Defendants' actions. Specifically, prior to the filing of this action, Plaintiffs purchased Infant's Product for their own personal household use. In so doing, Plaintiffs relied on Defendants' misrepresentations and omissions of material facts, as alleged in detail above. Had Defendants disclosed on the packaging that Infant's Product and Children's Product are identical, Plaintiffs would not have purchased the more expensive Infant's Product.

114.    Defendants' conduct in marketing, advertising, labeling, and packaging Infant's Product is likely to deceive reasonable consumers. The representations and omissions are likely to lead reasonable consumers to believe that the Infant's Product was specially formulated for infants or has some other medicinal quality for infants. Defendants harness parents' and caregivers' fear of inadvertently harming their infants by administering age-inappropriate medicine, which leads parents and caregivers of infants to seek out medication labeled as being for "infants."

115.    The misrepresentations by Defendants constitute unfair and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

116.     Defendants' business practices, as alleged herein, are unfair because: (1) the injury to consumers is substantial—they were deceived into thinking Infant's Product was specially formulated or otherwise unique for infants; (2) the injury is not outweighed by countervailing benefits to consumers or competition, as there can be no benefit to consumers where they are required to pay up to twice the price for the same medicine; (3) consumers could not reasonably have avoided the injury because Defendants intentionally misled the consuming public by means of their advertising, marketing and labeling of Infant's Product.

117.     Defendants' business practices are also unfair because their conduct in selling, advertising, marketing and labeling Infant's offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to specific constitutional and statutory provisions, including California's consumer protection statutes.

118.     Defendants' wrongful business practices constitute a continuing course of conduct of unfair competition since Defendants are marketing and selling Infant's Product in a manner likely to deceive the public.

119.     Defendants have peddled, and continue to peddle, their misrepresentations through a national advertising campaign.

120.     In addition, Defendants' use of the packaging to call attention to or give publicity to the sale of goods or merchandise which are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

121.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described above.

122.     Plaintiffs and members of the Class were misled into purchasing the Infant's Product by Defendants' deceptive and fraudulent conduct as alleged above.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:20-cv-07752-FMO-MRW

123.    Plaintiffs and members of the Class were misled and, because the misrepresentations and omissions were uniform and material, presumably believed Infant's Product was specially formulated or unique for infants.

124.    Pursuant to section 17203 of the UCL, Plaintiffs and members of the Class seek an order of this Court enjoining Defendants from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of Infant's Product.

125.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendants' misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendants' misrepresentations caused consumers to suffer economic damages because Defendants charge consumers substantially more for the Infants' Product—as much as twice as much per ounce—than for its Children's Product.

126.    Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair and fraudulent business practices alleged herein.

**FOURTH CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL)**
**'Unlawful' Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

127.    Plaintiffs herby incorporate paragraphs 1-126 as if fully set forth herein.

128.    Defendants' actions, as alleged herein, constitute illegal and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

129.    Defendants are unlawfully labeling, selling, marketing and advertising Infant's Product. Indeed, Defendants' violations of the FAL, CLRA and the UCL, as alleged above, constitute predicate acts, which violate the UCL's "unlawful" prong.

130.    Plaintiffs and members of the Class were misled because Defendants'

misrepresentations and omissions, described above, were uniform and material. Plaintiffs reasonably relied on those misrepresentations and material omissions, believing based thereon that Infant's Product was specially formulated or otherwise unique for infants. As a result of Defendants' misrepresentations and omissions, Plaintiffs and members of the Class lost money or property.

131.    Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendants from engaging in the unlawful business practices alleged herein in connection with the sale of Infant's Product.

132.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' misrepresentations and omissions. Indeed, Plaintiffs and the Class purchased Infant's Product because of Defendants' misrepresentations that Infant's Product is specially formulated or otherwise uniquely suitable for infants. Defendants' misrepresentations caused consumers to suffer economic damages because Defendants charge consumers substantially more for the Infants' Product— as much as twice as much per ounce—than for its Children's Product.

133.    Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair and fraudulent business practices alleged herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action and that Plaintiffs be appointed the Class Representatives and their undersigned counsel as Class Counsel;

B.    Injunctive relief (including but not limited to an order enjoining Defendants from pursuing the policies, acts, and practices complained of herein, and as further specific in paragraphs 67-69, *supra*);

C.    Pre-judgment interest from the date of filing this suit;

D.    Restitution;

E.    Damages;

F.    Reasonable attorneys' fees;

G.    Costs of this suit; and,

H.    Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, by and through their undersigned counsel, hereby request a trial by jury as to all issues so triable.

October 22, 2020                          Respectfully submitted,
                                          */s/ Gillian L. Wade*
                                          Gillian L. Wade, State Bar No. 229124
                                          gwade@mjfwlaw.com
                                          Sara D. Avila, State Bar No. 263213
                                          savila@mjfwlaw.com
                                          Marc A. Castaneda, State Bar No. 299001
                                          mcastaneda@mjfwlaw.com
                                          **MILSTEIN JACKSON FAIRCHILD &
                                          WADE, LLP**
                                          10250 Constellation Blvd., Suite 1400
                                          Los Angeles, CA 90067
                                          Tel: (310) 396-9600
                                          Fax: (310) 396-9635

                                          **CARNEY BATES & PULLIAM, PLLC**
                                          Hank Bates, California State Bar No. 167688
                                          hbates@cbplaw.com
                                          David Slade (to apply *pro hac vice*)
                                          dslade@cbplaw.com
                                          519 W. 7th Street
                                          Little Rock, Arkansas 72201
                                          Telephone: (501) 312-8500
                                          Facsimile: (501) 312-8505

                                          **PEARSON, SIMON & WARSHAW, LLP**
                                          Melissa S. Weiner (to apply *pro hac vice*)
                                          mweiner@pswlaw.com
                                          Joseph C. Bourne (SBN 308196)
                                          jbourne@pswlaw.com

800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

**EDELSBERG LAW, P.A.**
Scott Edelsberg, California State Bar No. 330990
scott@edelsberglaw.com
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

**DAPEER LAW, P.A.**
Rachel Dapeer (to apply *pro hac vice*)
Rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5523

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (to apply *pro hac vice*)
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299

*Counsel for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:20-cv-07752-FMO-MRW